UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------- X

HECTOR MANUEL RAMOS,            :

                Petitioner,            :

               - against -            :

UNITED STATES OF AMERICA            :

              Respondent.            :
------------------------------------------------- X

**USDC SDNY**
**DOCUMENT**
**ELECTRONICALLY FILED**
DOC #: _____
DATE FILED: 11/24/10

**OPINION AND ORDER**

**09 Civ. 7938 (SAS)**

**03 CR 724 (GEL)**

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.  INTRODUCTION

       Hector Manuel Ramos, proceeding pro se, moves to vacate, set aside, or correct his sentence under section 2255 of Title 28 of the United States Code ("section 2255").[1]  Ramos challenges his sentence on the ground that he was denied effective assistance of counsel.  In particular, Ramos asserts that he was unconstitutionally denied the effective assistance of counsel because his attorney: (1) persuaded him to plead guilty by promising to "take care of [him]" if he received a sentence of 360 months or more of imprisonment (the "inducement claim"); (2) withheld 3500 material; and (3) coerced him into reciting statements "prepared by the prosecutor and given to defense counsel" with respect to his plea

---

[1]    *See* Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody, filed September 16, 2009 ("Pet. Mot.").

allocution.[2]  For the reasons stated below, his motion is denied.

## II.    BACKGROUND

### A.    The Offense Conduct

On July 3, 2003, the S1 Superseding Indictment (the "Indictment")

was filed against Ramos and a co-defendant.  The seven-count Indictment charged

Ramos with the following:  (1) conspiring to commit murder for payment in

violation of section 1958 of Title 18 of the United States Code (Count One); (2)

intentionally killing, and aiding and abetting the killings of Martin Lora, Ramon

Garcia, Amado Feliz, and Luis Beltre in furtherance of a continuing criminal

enterprise in violation of sections 848(a), (c), and (e)(1)(A) of Title 21 of the

United States Code (Counts Two through Five); (3) the use, carrying of, and the

possession of firearms in furtherance of a crime of violence in violation of section

924(c) of Title 18 (Count Six); (4) conspiring to violate the narcotics laws of the

United States in violation of section 846 of Title 21 (Count Seven).[3]

Peter Quijano was appointed as Ramos' counsel after previous

appointments were disqualified or relieved by the Court.[4]  While preparing for

---

[2]      *See id.* at 4.

[3]      *See* Indictment ¶¶ 5-6, 11-16.

[4]      *See* Government's Memorandum of Law in Opposition to Defendant's
Motion under 18 U.S.C. ¶ 2255 ("Gov't Mem.") at 4-5.

2

trial, Quijano simultaneously began discussions with co-defendant's counsel and the Government in an effort to structure a "global" plea.[5] As a result of negotiations, the Government agreed to accept a plea to an S2 Superseding Information, which capped his sentence at 30 years of imprisonment.[6] Ramos also had "to plead pursuant to a plea agreement in which the United States Sentencing Guidelines range was 360 months to life imprisonment," and in which [Ramos] would waive his right to appeal any sentence at or below 360 months.[7] On August 29, 2006, Ramos pled guilty before then-District Judge Gerard Lynch pursuant to a plea agreement. In the Plea Agreement, the parties stipulated that a sentence of 360 months of imprisonment was reasonable based on the sentencing factors set forth in section 3553(a) of Title 18.[8] Ramos waived the right to file a direct appeal, to litigate any sentence at or below a sentence of 360 months of imprisonment under section 2255 and/or 2241 of Title 28, and to attack his conviction, on direct appeal or collaterally, on the ground that the Government failed to produce discovery material ("3500 material").[9] On November 27, 2006, Judge Lynch

---

[5]     *See id.* at 6.

[6]     *See id.*

[7]     *Id. See also* Plea Agreement, Ex. E to Gov't Mem., at 6.

[8]     *See* Plea Agreement at 4-5.

[9]     *See id.* at 6.

accepted Ramos' guilty plea and sentenced him to 360 months in prison.[10]

### B.     Procedural History

On December 14, 2006, Ramos challenged the validity of his plea on direct appeal. Ramos argued that "the District Court's plea allocution failed to comply with Federal Rule of Criminal Procedure 11(b)(1)(N) which requires that the defendant understands 'the terms of any plea-agreement provision waiving the right to appeal or to collaterally attack the sentence.'"[11]  The Second Circuit found that "the District Court correctly determined that defendant understood the terms of the plea agreement," and affirmed Ramos' guilty plea in a Summary Order filed on October 14, 2008.[12]  Ramos' section 2255 motion, dated August 18, 2009, was received by this Court's Pro Se Office on August 24, 2009, and was filed by the Clerk of the Court on September 16, 2009. On December 17, 2009, Ramos filed a motion for summary judgment and judgment by default. This motion was denied in an Order filed on July 2, 2010.[13]

---

[10]     *See* Plea Transcript ("Plea Tr."), Ex. F to Gov't Mem., at 36.

[11]     *United States v. Ramos,* 292 Fed. App'x 134, 135 (2d Cir. 2008) (quoting Fed. R. Crim. P. 11(b)(1)(N)).

[12]     *Id.*

[13]     *See* 7/2/10 Memorandum Opinion and Order (Document #94 in 03 CR 724).

## III.   APPLICABLE LAW

Section 2255 permits a convicted person held in federal custody to petition the sentencing court to vacate, set aside, or correct a sentence.  A properly filed motion under section 2255 must allege that:  (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the sentencing court was without jurisdiction to impose a sentence; (3) the sentence was in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack.[14]  Accordingly, collateral relief under section 2255 is permitted "only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes 'a fundamental defect which inherently results in a complete miscarriage of justice.'"[15]  A petitioner seeking to attack his sentence based on ineffective assistance of counsel must:  (1) show that counsel's performance fell below "an objective standard of reasonableness" under "prevailing professional norms," and (2) "affirmatively prove prejudice," namely, demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[16]

---

[14]     *See* 28 U.S.C. § 2255.

[15]     *Cuoco v. United States*, 208 F.3d 27, 29 (2d Cir. 2000) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)).

[16]     *Strickland v. Washington*, 466 U.S. 668, 688, 693-94 (1984).

When analyzing a claim that counsel's performance did not meet constitutional standards, "judicial scrutiny of counsel's performance must be highly deferential."[17] The court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."[18] "In assessing the attorney's performance, a reviewing court must judge his conduct on the basis of the facts of the particular case, 'viewed as of the time of counsel's conduct,' and may not use hindsight to second-guess his strategy choices."[19]

## IV.   DISCUSSION

### A.   Enforceability of the Collateral Attack Waiver

As stated earlier, Ramos claims that he received ineffective assistance of counsel and argues three grounds in support of this claim.[20] However, merely raising an ineffective assistance of counsel claim is not sufficient to render a collateral attack waiver unenforceable.[21] A "collateral attack waiver is unenforceable only if the defendant has a 'meritorious' claim that 'the waiver was

---

[17]     *Id.* at 689.

[18]     *Id.*

[19]     *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994) (quoting *Strickland,* 466 U.S. at 690).

[20]     *See* Pet. Mot. at 4.

[21]     *See United States v. Monzon,* 359 F.3d 110, 118 (2d Cir. 2004).

6

the result of ineffective assistance of counsel.'"[22]  Defendant must successfully challenge the "validity of the process by which the waiver [was] procured."[23]  Ramos, however, does not claim — nor can he demonstrate — that he received ineffective assistance with respect to the collateral attack waiver in the Plea Agreement.

The record clearly shows that "the District Court confirmed that petitioner had met with his attorney to discuss the case, that his attorney had explained the consequences of pleading guilty, and that [Ramos] was satisfied with his representation."[24]  Indeed, Ramos confirmed that prior to pleading guilty before the Court:  (1) he was afforded enough time and opportunity to discuss his case with his attorney; (2) he discussed all the charges against him with his attorney; and (3) his attorney explained the consequences of a guilty plea, which included the terms of the collateral attack waiver.[25]  Accordingly, the collateral attack waiver in the Plea Agreement must be enforced.  Furthermore, were this Court to set aside the collateral attack waiver, Ramos' section 2255 motion would be denied

---

[22]     *Morales v. United States,* No. 08-CV-3901, 2009 WL 3353064, at *4 (S.D.N.Y. Oct. 20, 2009) (quoting *Monzon,* 359 F.3d at 118-19).

[23]     *Frederick v. Warden,* 308 F.3d 192, 195 (2d Cir. 2002) (citing *United States v. Hernandez,* 242 F.3d 110, 113-14 (2d Cir. 2001) (per curiam).

[24]     *Ramos,* 292 Fed. App'x at 135.

[25]     *See* Plea Tr. at 11-12.

on the merits.

B.      **Inducement by Counsel**

        The penalties that Ramos faced under the Indictment, absent the Plea

Agreement, were severe.[26]  "Count One carried with it a maximum sentence of 10

years' imprisonment."[27]  Counts Two through Five each carried a minimum

sentence of 20 years in prison and a maximum sentence of the death penalty.[28]

Finally, Count Six carried a minimum sentence of 10 years of imprisonment[29] and

Count Seven carried a minimum sentence of 10 years in prison and a maximum

sentence of life imprisonment.[30]  Ramos asserts that counsel induced him to forego

a trial and agree to the Plea Agreement by promising to "take care of [him] if the

judge gave [him]" a sentence of 30 years or more.[31]  However, he does not offer

any evidence in support of this assertion, which is denied by Quijano.

Furthermore, counsel's advice that it was in Ramos' best interest to accept the Plea

Agreement rather than proceed to trial was entirely reasonable given that absent the

---

[26]    *See* Gov't Mem. at 3.

[27]    *Id.* (citing 18 U.S.C. § 1958(a)).

[28]    *See* 21 U.S.C. § 848(e)(1)(A).

[29]    *See* 18 U.S.C. § 924(c)(1)(A)(iii).

[30]    *See* 21 U.S.C. § 846.

[31]    Pet. Mot. at 4.

8

Plea Agreement he would have faced a sentence of life in prison.

When Quijano was appointed to represent Ramos, "[he] learned that the [G]overnment's evidence at trial would consist of, inter alia: (1) the testimony of several cooperating witnesses, at least one of whom had previously testified at other trials; and (2) a post-arrest statement made by Ramos to agents of the Federal Bureau of Investigation after Ramos had been advised of his *Miranda* Rights."[32] Based on this information and Quijano's legal knowledge, Quijano repeatedly warned Ramos that if he proceeded to trial, it was very likely that "he would be convicted of at least one substantive murder count" and "sentenced to life without parole."[33] Counsel denies that he made any promise to Ramos.[34] Rather, counsel asserts that he consistently told Ramos that "the plea had been structured in order to limit his exposure to a maximum of 30 years, but that there was no realistic expectation that the Court would sentence him to anything less than the 30 year maximum given that he had personally murdered four individuals."[35] There is no evidence to dispute counsel's assertions, other than Ramos' self-serving assertions.

---

[32]     10/30/09 Affidavit of Peter Enrique Quijano, Esq. ("Quijano Aff.") ¶ 4.

[33]     *Id.* at ¶ 8.

[34]     *See id.* at ¶ 12.

[35]     *Id.*

9

Under the circumstances, Ramos' attorney gave him a realistic assessment of his case and provided appropriate legal advice.  Furthermore, Ramos' attorney explicitly denies making any promise to "take care" of Ramos.[36]  Thus, Ramos' claim regarding improper inducement by counsel is without merit.

### C.   Failure to Disclose 3500 Material

Ramos alleges that Quijano failed to disclose that he had "first-hand knowledge" of Ramos' case as a result of prior representations "arising out of the same circumstances," and that Quijano withheld 3500 material obtained from those prior representations that could have resulted "in a different outcome for defendant at plea negotiation[s]."[37]  In one case Ramos refers to, *United States v. Milvio Duarte*, 99 CR 192, Quijano cross-examined one of the witnesses who was ready to testify against Ramos.[38]  Neither the subject matter nor the witness' testimony had any relation to the charges Ramos faced.[39]  In the other matter identified by Ramos, *United States v. Velasquez/Darnell Green*, 96 CR 126, Quijano represented one of forty-six defendants.[40]  On July 11, 1997, the case was dismissed against

---

[36]     *Id.*

[37]     Pet. Mot. at 4.

[38]     *See* Quijano Aff. at ¶ 15.

[39]     *See id.*

[40]     *See id.* at ¶ 16.

Quijano's former client.  Therefore, Quijano "was not in the position to receive trial minutes related to the trial of" his former client's co-defendants, as Ramos alleges.[41]  Nor was Quijano able to glean from the trial of his former client's co-defendants "whether there was any 3500 material for alleged cooperating witnesses against Ramos."[42]  Counsel had no first-hand knowledge of Ramos' case through prior representations and did not withhold trial transcripts or 3500 material from Ramos.  Ramos' claim to the contrary is meritless.

### D.    The Plea Hearing

Lastly, Ramos claims that he was coerced into reciting statements prepared by the prosecutor and given to him by defense counsel.[43]  However, counsel asserts that "Ramos was not coerced either by the prosecutor or by [him] into 'reading from statements that [were] prepared by the prosecutor.'"[44]  Counsel asserts that he prepared the statements for Ramos to read during the plea colloquy, as it is his general practice to prepare a written factual allocution for a client pleading guilty to ensure that his client provides a legally sufficient basis for the

---

[41]    Gov't Mem. at 18.

[42]    *Id.*

[43]    *See* Pet. Mot. at 4.

[44]    Quijano Aff. at ¶ 17 (quoting Pet. Mot. at 4).

11

court to accept his guilty plea.[45]  There is nothing inappropriate about this practice

so long as the defendant agrees that the statement is accurate and voluntarily

adopts the statement.  Moreover, Judge Lynch asked Ramos during the proceeding

whether the statements he was reading were true and Ramos responded

affirmatively.[46]  Accordingly, Ramos' claim that his plea was coerced is meritless.

## V.    CONCLUSION

For the foregoing reasons, Ramos' section 2255 motion is denied.

The remaining issue is whether to grant a certificate of appealability ("COA").  For

a COA to issue, a petitioner must make a "substantial showing of the denial of a

constitutional right."[47]  A "substantial showing" does not require a petitioner to

demonstrate that he would prevail on the merits, but merely that reasonable jurists

could debate whether "the petition should have been resolved in a different manner

or that the issues presented were 'adequate to deserve encouragement to proceed

further.'"[48]  Petitioner has made no such showing.  Accordingly, I decline to grant

---

[45]     *See id.*

[46]     *See* Plea Tr. at 33.

[47]     28 U.S.C. § 2253(c)(2).

[48]     *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983) (quotation marks and citation omitted)). *Accord Middleton v. Attorneys Gen. of the States of New York and Pennsylvania*, 396 F.3d 207, 209 (2d Cir. 2005) (denying COA where reasonable jurists could not

a certificate of appealability.  The Clerk of the Court is directed to close this case.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:       New York, New York
             November 23, 2010

_____

debate whether the district court's dismissal of the petition was correct).

13

**-Appearances-**

**Petitioner (Pro Se):**

Hector Manuel Ramos
# 52745-054
FCI Otisville
P.O. Box 1000
Otisville, NY 10963

**For Respondent:**

Howard S. Master
Assistant United States Attorney
One St. Andrew's Plaza
New York, NY 10007
(212) 637- 2248